FILED

2018 NOV -7  PM 12: 07

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

Isi Chito Lusa Yananta
207 South Linda Drive
Shelbyville, Tennessee 37160

PLAINTIFF

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT TENNESSEE

Isi Chito Lusa Yananta            )
Akawenc Aka Wasteuh Meherrin Nation  )        CASE NO._____
                                  )
            Plaintiff             )
                                  )
Vs.                               )
                                  )
STATE OF INDIANA          )
Indiana Department of Child Services
4150 N Keystone Avenue, Indianapolis, IN.  )
CITY OF INDIANAPOLIS              )
Indianapolis Metropolitan Police Department)
address
*DEFENDANTS, ET AL*

## *VERIFIED COMPLAINT*

Comes now, Plaintiff, Isi Chito Lusa Yananta, enrolled tribal member and citizen Akawenc Aka Wasteuh Meherrin Nation, known publically as Hakeem Shabazz (Plaintiff), bringing claim for child neglect, malicious prosecution, official oppression, child endangerment, fraud, unlawful detention without a Warrant; the child was taken forcefully from Plaintiff; Plaintiff is the biological parent of the child in this matter and has always assisted in the cared for her.

39  Plaintiff at all times relevant has lived in Shelbyville, Tennessee and receives POST at 207 S.

40  Linda, Shelbyville, Tennessee, Plaintiff at all times during this matter lived in Tennessee, and

41  DEFENDANTS et al have at all times relevant to this matter, lived in the state of Indiana.

42  ## *JURISDICTION*

43  Plaintiff bring this civil rights lawsuit pursuant to 42 U.S.C. §1983 to redress the deprivation by

44  Defendants, at all times herein acting under color of state law, of rights secured to Plaintiffs

45  under the United States Constitution, including the First, Fourth, and Fourteenth Amendments,

46  and under federal law, including 42 U.S.C. §671(a)(16); jurisdiction is also pursuant to 28 U.S.

47  Code § 1332 – Diversity of citizenship, amount in controversy, (a), (b) and (c);

48  Jurisdiction is conferred on this Court by 28 U.S.C. §1343(3) and 1343(4), which provide for

49  original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983. Jurisdiction is

50  also conferred by 28 U.S.C. gr§1331(a) because claims for relief derive from the United States

51  Constitution and the laws of the United States. Jurisdiction of this Court over any claim for

52  Declaratory Relief is conferred by 28 U.S.C. §2201. This Court has supplemental jurisdiction

53  over Plaintiffs' state law causes of action pursuant to 28 U.S.C. § 1367(a).

54  Venue properly lies in the United States District Court, Middle District of Tennessee for Article

55  III claims, in that the events and circumstances herein alleged have been ignored by the state of

56  Indiana and Plaintiff has been provided limited to no remedy or recourse.

57  ## *Complaint*

58  Plaintiff has exhausted his remedies, or otherwise complied with state law requirements for the

59  filing of appropriate notices of tort causes of action against Defendants pursuant to state law, and

60  Plaintiffs' claims have been rejected.

61
62  ## *II.*
63  ## *PARTIES*

64  Isi Chito Lusa Yananta, non-resident inhabitant and enrolled tribal member of the Akawenc

65  Meherrin tribe (herein) was at all times relevant to the facts and circumstances herein living in

66  the county of Bedford located in the state of Tennessee.

67  Plaintiff, Isi Chito Lusa Yananta is the natural and biological parent of the minor child AW (Lil

68  Yananta) (born December 7, 2015). Plaintiff' tribe has renamed A.W to Lil Yananta in these

69  pleadings, and in order to protect the child's privacy, it is Plaintiff' intent to use this designation.

70  At all times relevant herein, prior to the barring of access of Plaintiff' child from Plaintiff' newly

71  established protection cares by Defendants, Plaintiff provided economic support and constant

72  video and phone contact, vigilantly watching over the child's care. From the moment 'Lil

73  Yananta's mother, DOMINIQUE WILLIAMS (DW) informed Plaintiff, that she had given birth

74  to a child (Lil Yananta) after their second sexual encounter.

75  At all times prior to the wrongful removal from Plaintiff' care and supervision and continued

76  detention of Plaintiff' child by Defendants, Plaintiff enjoyed the company, companionship, and

77  excitement of being awarded his child, an expectation of traveling from Tennessee, looking to

78  experience all the benefits and burdens of his rights of familial association with his child.

79  Defendant STATE OF INDIANA ("STATE") is a municipality in corporate form, organized and

80  existing under the laws of the State of Indiana, and has administrative subunits thereof the

81  HUMAN SERVICES SYSTEM, and its related unit, the DEPARTMENT OF CHILD

82  SERVICES (collectively referred to herein as the DCS").

83  DCS is a STATE governmental agency organized and existing pursuant to the law and policies of

84  Defendant STATE, which together with STATE, promulgated, encouraged, and/or permitted, the

85  policies, patterns, and practices under which the individual Defendants, committed the acts or

86  omissions complained of herein, and of which policies, practices, customs, and/or procedures,

87  and/or failure to train, whether or not promulgated in written form, encouraged, or allowed to

88  persist by defendant STATE, STATE condoned, ratified, and ignored without remediation the

89  conduct of the social worker defendants pursuant to said policies, practices, customs, and

90  procedures, as complained of herein.

91  As the employer of social workers and their supervisors, STATE and/or DCS had primary

92  responsibility for the training, education, and supervision of social workers, emergency response

93  workers, dependency intake workers, placement workers, and all other DCS personnel, and DCS

94  supervisors. Plaintiffs contend that the policies, practices and procedures of DCS aforesaid and

95  herein below evidenced, inclusive of the warrantless removal of a minor child in cases where the

96   child is not in imminent risk of serious bodily injury, and then taking that child and placing that
97   child in the custody of a know registered sex offender is extreme negligence and endangering to
98   the child, which constitute a basis for governmental liability in this case pursuant to the *Monell*
99   theory of liability, in that STATE has failed to train at all and/or failed to train employees
100  adequately on state and federal law ICWA statutes implicated in the context of a child
101  abuse/neglect investigation, and hereby seek to hold STATE responsible in whole or in part for
102  the conduct of the individual Defendants herein named.

103  Defendant CITY OF INDIANAPOLIS ("CITY") is a municipality in corporate form, organized
104  and existing under the laws of the State of Indiana, and has administrative subunits thereof ,
105  including the INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT (herein "IMPD").

106
107  Plaintiff hereby sues all agencies and departmental units of CITY specified hereinabove under
108  the designation of CITY herein, and/or interchangeably. Plaintiff hereby sues all agencies and
109  departmental units of CITY specified hereinabove under the designation of CITY herein, and/or
110  interchangeably.

111  Defendant KAMARY NUNN (herein "NUNN") whose acts as alleged herein were performed in
112  her individual capacity or under color of state law, was at all times material hereto, upon
113  Plaintiffs' information and belief, a case worker and/or emergency response worker, employed
114  by STATE.

115  Defendant SHIRLEY PEREZ (herein "PEREZ"), whose acts as alleged herein were performed in
116  her individual capacity or under color of state law, was at all times material hereto, upon
117  Plaintiff' information and belief, a supervisor and/or case worker and/or emergency response
118  worker, employed by STATE. Upon Plaintiffs' information and belief, PEREZ was at all relevant
119  times herein NUNN s supervisor.

120  Plaintiff is informed and believe, and thereon allege, that the individually named Defendant
121  social workers were decision makers in the making and/or implementation of STATE policy with
122  regard to the removal and continued detention of Lil Yananta in the course of an investigation by
123  an employee into allegations of child abuse and endangerment, and the de facto decision makers
124  on the decision to remove the child such as Lil Yananta from her father without a warrant,
125  without exigent circumstances, and without consent.

126  Plaintiff are informed and believe and, based upon such information and belief, allege that at all
127  times herein mentioned, NUNN , and PEREZ were each the agent and/or employee of their co-
128  defendant STATE, and each of them was acting within the scope, purpose and authority of and/or
129  employment and with the knowledge, permission and consent of said co-defendants, and each of
130  them, and/or within the scope and purpose of a conspiracy to violate Plaintiff' rights.

131  Defendant CITY OF INDIANAPOLIS (herein "CITY") is a municipality organized and
132  operating under the laws of Indiana.

133  The INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT (herein "IMPD") is a
134  governmental agency organized and existing pursuant to the law and policies of Defendant
135  CITY, which promulgated, encouraged, administered, and/or permitted, the policies, practices
136  and procedures under which the individual Defendant employees committed the acts or
137  omissions complained of herein, and either intentionally or negligently, whether as a result of
138  policies, practices, or procedures, or as a result of ineffective, non-existent, or inadequate
139  training and education of employees, caused or were otherwise responsible for the acts or
140  omissions of said employees as complained of herein, and Plaintiff allege that the policies,
141  practices, and/or procedures of the CITY, as determined and effected by the individual
142  Defendants and other law enforcement officers of IMPD, constitute and/or engender a
143  circumstance and/or environment of deliberate indifference to the rights and safety of inhabitants
144  of the community.

145  Defendant officer  FORD GOBLE  badge # G5931 (herein "GOBLE ") whose acts as alleged
146  herein were performed in his individual capacity or under color of state law, was at all time
147  material hereto, upon Plaintiffs' information and belief ,was an employee of the CITY as an
148  IMPD law enforcement officer.

149  Defendant sergeant  M. MORGAN badge # 20260, (herein "MORGAN") whose acts as alleged
150  herein were performed in his individual capacity or under color of state law, was at all time
151  material hereto, upon Plaintiff' information and belief, an employee of the CITY and/or IMPD as
152  a police officer.

153  Plaintiff is informed and believe, based upon such information and belief, allege that at all times
154  herein mentioned, "MORGAN", and "GOBLE " were each the agent and/or employee of their

155 co-defendant CITY and/or IMPD, and each of them was acting within the scope, purpose and
156 authority of and/or employment and with the knowledge, permission and consent of said
157 codefendants, and each of them, and/or within the scope and purpose of a conspiracy to violate
158 Plaintiff' rights. Plaintiff is ignorant of the true names and identities of those Defendants sued
159 fictitiously herein inclusive.

160 Plaintiff is informed and believe that the individual Defendants named herein, including the Doe
161 Defendants participated in some manner in the events set forth in this Complaint, or failed to
162 participate in some manner, which acts or failures to act were in some manner a proximate cause
163 of the injuries complained of by Plaintiff herein, and for which, whether by conspiracy to violate
164 the Plaintiff' rights, agreement, inadequate supervision, inadequate training, consent, ratification,
165 or active participation, such Doe Defendants are responsible and/or liable for the Plaintiffs'
166 injuries and damages.

167 ### III.
168 ### FACTUAL ALLEGATIONS
169 ### BACKGROUND
170

171 Plaintiff met DW while she was working at a Burger King. Plaintiff was traveling on Greyhound
172 and had a quick layover in Indianapolis during the summer of 2014. Plaintiff reconnected with
173 DW on social media and visited her twice. During the last visit DW got pregnant, and informed
174 Plaintiff after baby was born.

175 After Lil Yananta was born Plaintiff was allowed to see her a total of about seven days because
176 DW did not want to upset her boyfriend ANTONY GLEN WILLIAMS JR ("WILLIAMS").
177 Plaintiff did not know at the time that WILLIAMS was a registered "Sex Offender".

178 On or about SEPTEMBER 29, 2017 the STATE through DCS contacted Plaintiff with a mailed
179 correspondence. Plaintiff was informed that DCS had hired an investigator to look for Lil
180 Yananta' father because the child was being neglected along with her other siblings by DW and
181 the STATE was intervening in the matter.

182 .Plaintiff contacted DCS and scheduled to appear at the next court date. On October 3, 2017
183 Plaintiff attended the hearing concerning custody of Plaintiff' child, and Plaintiff filed the

184  paperwork for gaining custody. DW was visibly irritated and surprised to see Plaintiff in court at
185  child hearing, because she had tried to hide Plaintiff' whereabouts from DCS.

186  Plaintiff again attended another hearing a few days later and was told that his chances of custody
187  was looking good and Plaintiff attended every subsequent court date until his child was released
188  on April 13, 2018.

189  On or about December 6, 2017, Plaintiff drove to Indianapolis to visit Lil Yananta for her second
190  birthday. Plaintiff arrived with toys for Lil Yananta and because it was close to Christmas,
191  Plaintiff brought toys for the other children because DW had no money. Plaintiff was also
192  concerned about the court taking the other children so Plaintiff gave DW money for utilities and
193  helped her buy a vehicle to transport children and maybe find work.

194  Plaintiff knew that DW was pregnant again and that she was now married to WILLIAMS, but
195  Plaintiff chose to help DW anyway.

196  While in Indianapolis for a two day visit with Lil Yananta on her birthday, Plaintiff went by
197  DW's home to pick up Lil Yananta and DW. Plaintiff took DW and Lil Yananta to purchase a car
198  seat and to purchase a vehicle for DW. Plaintiff and DW found and purchased a truck and drove
199  back to DW's home to gather LIL Yananta's clothes for an overnight stay for her birthday.

200  When Plaintiff strapped Lil Yananta into her car seat, DW began saying, "You're not gonna bring
201  my baby back" Plaintiff told her to stop the nonsense because will still have to go to court, but
202  DW kept insisting and started trying to get into Plaintiff' car.

203  Plaintiff stood in the way and DW picked up a stone threatened to hit Plaintiff or Plaintiff' car.
204  DW then went to other side of car and started to disconnect the baby's car seat. Plaintiff then
205  reached into the car and pulled DW out of Plaintiff' car because Plaintiff believed DW might
206  hurt the child because she became extremely angry for no apparent reason. DW again grab a
207  stone from the ground and hit the car, Plaintiff quickly closed his car door and backed out of the
208  driveway.

209                          ***UNLAWFUL CHILD DETENTION***

210  On or about January 19 2018, Plaintiff was made aware that he had a "WARRANT"; Plaintiff
211  was contacted by the Law Firm of KEFFER BARNHART, Attorney Barnhart strongly advised

212   Plaintiff to turn myself in and recommended that I go to WOODS BAIL BOND SERVICE.
213   Plaintiff asked how did he get a Warrant and where the Warrant was located and no one had or
214   provided a Warrant. Plaintiff was told by Barnhart, Woods Bonding and IMPD that they did not
215   have the Warrant yet.

216   Plaintiff arrived in Indianapolis and went straight to the bonding company and paid a BOND for
217   the pending arrest. After paying the BOND Plaintiff went with Bondsman to the IMPD jail where
218   Plaintiff showed BOND papers and the Bondsman left. For the next nine hours Plaintiff was held
219   in jail without presentment of charges or any official statement showing the claims against
220   Plaintiff; even though Bond had been posted prior to the arrest; Plaintiff' rights were violated as
221   in "TRESVANT V. CITY Of TAMPA". Arrest of Plaintiff was due to an incomplete investigation
222   by IMPD employees of CITY.

223                          *DAY AFTER REMOVAL*

224   On January 23 , 2018 Plaintiff appeared in court for an alleged battery against DW, which
225   allegedly took place during the birthday visit on December 6, 2018. Without thorough
226   investigation the claims admitted by DW, IMPD gave incomplete testimony to secure the arrest
227   of Plaintiff without investigating the allegations. GOBLE  and MORGAN violated Due Process
228   and did not follow the policy of evidence in child custody matters, and in the case of Indian
229   Child Welfare Act, evidence must be provided before barring a parent from the child , which is a
230   member of a tribe. Both Plaintiff and Lil Yananta are enrolled members of the Tali Baha Tribe
231   and Akawenc Meherrin Nation.

232   Plaintiff was unlawfully detained from his child without proper investigation by IMPD nor by
233   the DCS worker KAMARY NUNN , who attested under penalty of perjury that Lil Yananta was
234   safe and the house Lil Yananta was living in was safe, but in reality WILLIAMS was a known
235   registered sex predator. Plaintiff now had no way to check on the health and wellness of his child
236   for the first time since he was brought into her life.

237   The failure of IMPD to conduct a complete investigation before requesting arrest, violated both
238   Lil Yananta' rights to safe environment and Plaintiff' right to Due Process a Constitutional right,
239   and DCS' placement and barring Plaintiff access to Lil Yananta while she was in an already
240   known unsafe and harmful environment as declared by DCS, causes suffering of constant mental

241  anguish from not know if his child suffered during the illegal detention, as herein mentioned 1 –
242  260 above.

243                              *FURTHER DCS INVOLVEMENT*

244  On 10 / 24 / 2017 NUNN  submitted information reflecting that all members of household where
245  Lil Yananta was placed was safe and all parties check out ok. Plaintiff found later from another
246  DCS worker named NNNNNNNN, that everybody did not check out and that DW' husband was
247  a "Sexual Predator" and had been arrested for battery against DW.

248  Plaintiff recalls on the night of the alleged assault, WILLIAMS called Plaintiff accusing Plaintiff
249  of sleeping with DW while he was visiting the baby, Lil Yananta. Plaintiff also heard DW crying
250  in the background. Later WILLIAMS called again and swore that Plaintiff would not ever get
251  custody after tonight.

252  In a proper juvenile dependency Petition DCS would have known these things and should have
253  given un-speculative information to the court which aided in the detention and separation.

254  A proper Petition would contain many "facts" and "allegations" that were known to PEREZ and
255  NUNN  to be untrue or were made without any foundation. Further, PEREZ and NUNN
256  misrepresented facts and failed to provide any of the contradictory or exculpatory information to
257  the position that Plaintiff' child had either been abused or neglected, or were at substantial risk of
258  being abused or neglected by Plaintiff, before detention or continued detention. Plaintiff has
259  requested information, but has been denied.

260  Also, Plaintiff is informed and believe, that on the occasion where he was not made aware of
261  ANTHONY WILLIAMS status, NUNN, with the knowledge, consent, and/or ratification of
262  PEREZ, instructed others not to notify Plaintiff that they had reason for concern about Lil
263  Yananta, because they did a failed investigation in administering the juvenile dependency
264  Petition" and they knew they were continuing to place child in potential peril.

265                                      *IV.*

266                                  *DAMAGES*

267  As a result of the conduct of DEFENDANTS, PLAINTIFFS suffered severe emotional distress,
268  anxiety and general damage to their psyche, to such an extent as to cause physical manifestations

269   of pain and symptoms of nausea and severe depression, including but not limited to
270   sleeplessness, headaches, fatigue, malaise, irritability, inability to focus, a generalized fear of
271   authority figures and social workers, loss of appetite and loss of weight. PLAINTIFF also caused
272   by the stress of the malicious court proceedings. The incident also caused humiliation and
273   embarrassment and loss of reputation in the community to PLAINTIFFS, has caused the
274   incursion of medical fees, therapy fees, and expenses related thereto, and is likely to cause the
275   therapy, and/or counseling fees in the future as well as expenses related thereto.

276   PLAINTIFF is informed and believe, and thereupon allege, that he was placed on various state
277   and local database registries for perpetrators of criminal assault  further damaging their
278   reputation and likely causing damages in the future in their rights of membership, society,
279   community participation, and association.

280   PLAINTIFF seeks an award of exemplary (punitive) damages under federal law for malice,
281   oppression and fraud, to make an example of and punish DEFENDANTS, and in the hope of
282   deterring future conduct of a similar nature.

283                                    *V.*
284                        ***CLAIMS FOR RELIEF***
285                        ***FIRST CLAIM FOR RELIEF***
286        ***VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983)***
287   [PLAINTIFFS against NUNN  and PEREZ, and Warrantless Removal]

288   PLAINTIFF re-allege and incorporate paragraphs above, inclusive, as though fully set forth at
289   this point, as they relate to a claim for relief for a violation of PLAINTIFF' rights under the 14th
290   Amendment to the United States Constitution, against PEREZ and NUNN, and by virtue of the
291   existence of policies, practices, customs and procedures, as well as inadequate training on the
292   standards under federal and/or state law allowing for the warrantless removal / barring access to
293   the child, the CITY and STATE, with regard to the violation of the PLAINTIFF' rights of
294   familial association with his child by way of their warrantless removal / barring access.

295   PLAINTIFF re-allege the removal of his child was undertaken without consent, probable cause,
296   a protective custody warrant, or exigent circumstances justifying removal of the minor children,
297   and that the policies, practices, customs, procedures, or inadequate training of social workers

298  such as PEREZ AND NUNN, and by STATE, and officers GOBLE and MORGAN by CITY
299  and/or IMPD were a contributing or driving force behind the action of removing the child
300  needlessly and without a warrant from PLAINTIFF.

301  PLAINTIFF re-allege paragraphs 146 through 147 as said damages relate to a claim for relief for
302  a violation of PLAINTIFF' civil rights for the warrantless removal of the minor children. The
303  punitive damage allegations of paragraph 148 apply in this claim for relief to all individually-
304  named Defendants.

305  ### SECOND CLAIM FOR RELIEF
306  ### VIOLATION OF CIVIL RIGHTS (42 U.S.C. 1983)
307  [PLAINTIFFS against PEREZ and NUNN – Continued Detention]

308
309  PLAINTIFFS re-allege and incorporates paragraphs mentioned above as inclusive, as though
310  fully set forth at this point, as they relate to a claim for relief for a violation of PLAINTIFF'
311  rights under the 14th Amendments to the United States Constitution, with regard to the violation
312  of PLAINTIFFS' rights of familial association with their children, as separate and distinct from
313  removal of the children, and consisting of the continued detention of the children pending a trial
314  by the juvenile court on the issue of jurisdiction over the children, and against defendants NUNN
315  and PEREZ, and by virtue of the existence of policies, practices, customs and procedures, as well
316  as inadequate training on the standards under federal and/or state law allowing for the
317  warrantless removal and continued detention of children, the STATE.

318
319  PLAINTIFF allege the removal of PLAINTIFF' children was undertaken without consent,
320  probable cause, a protective custody warrant, or exigent circumstances justifying removal of the
321  minor children and thereafter detained when there remained no court order, warrant, or exigent
322  circumstances, which was without any cause or basis under federal law, and in direct
323  contravention of ICAW, which called for return of the children, and that the policies, practices,
324  customs, procedures, or inadequate training of social workers by STATE, were a driving force
325  behind the action of removing and continuing the detention of her children needlessly and
326  without a warrant.

327   PLAINTIFF allege that PLAINTIFF' children's continued detention, and/or their placement
328   other than with PLAINTIFF, from the time of their removal and through the period of time until
329   they are returned to PLAINTIFF, was and achieved by the presentation of false facts and the
330   exclusion of exculpatory facts and information to the court; committing perjury, fabrication of
331   evidence, failure to disclose known exculpatory evidence.

332                   *JUVENILE DEPENDENCY PETITION AND DETENTION REPORT*

333   Defendants PEREZ and NUNN  did not at any time reasonably consider, implement, or attempt,
334   any aspect of the "reasonable efforts" required by law and/or regulations regarding social work
335   in the area of child protection after removal from a parent or guardian, and this conduct is also a
336   result of the deliberate indifference to the rights and safety of parents and children evidenced by
337   the failure to train, or failure to train adequately, those employees such as the employee
338   defendants herein of STATE.

339   ICWA and Indiana laws but not limited to W&IC §305, 306, and 309, and Title 31 Regulations
340   31.25, 31.125.221, and 31.125.222, require that a social worker do a reasonable and diligent
341   investigation and make reasonable efforts and consider reasonable alternatives to not remove and
342   instead continue a child in the home of his/her parent(s) as the least damaging alternative to DCS
343   intervention of any kind. No such reasonable efforts were made in this matter.

344   PLAINTIFFS re-allege paragraphs above as said damages relate to a claim for relief for a
345   violation of PLAINTIFF' civil rights for the continued detention of PLAINTIFF' children in
346   violation of PLAINTIFF' rights of familial association. The punitive damage allegations apply in
347   this claim for relief to all individually-named Defendants.

348                   *NINTH CLAIM FOR RELIEF MALICIOUS PROSECUTION*
349   [PLAINTIFFS against NUNN  and PEREZ]

350   PLAINTIFF re-alleges and incorporate paragraphs above inclusive, as though fully set forth at
351   this point, as they relate to a claim for relief for malicious prosecution.

352   PLAINTIFFS allege that the prosecution of the juvenile dependency case against PLAINTIFF
353   was conducted using the presentation of false facts and information and the exclusion of
354   exculpatory evidence, all committed under the penalty of perjury and all committed with malice.

355  NUNN  and PEREZ's conduct is also a result of the deliberate indifference to the rights and
356  safety of parents and children evidenced by the failure to train, or failure to train adequately,
357  those employees such as the employee defendants herein of STATE.

358  PLAINTIFF submit the allegations set forth all necessary elements for a claim for relief against
359  said defendants for malicious prosecution.

360  PLAINTIFFS re-allege paragraphs above at this point as said damages relate to a claim for relief
361  for malicious prosecution, as stated. The punitive damage allegations of paragraphs above apply
362  in this claim for relief to all individually-named Defendants.

363                          ***THIRD CLAIM FOR RELIEF***
364  [PLAINTIFFS against MORGAN, and GOBLE]

365  PLAINTIFFS re-allege and incorporate paragraphs as mentioned above, inclusive, as though
366  fully set forth at this point, as they relate to a cause of action for a violation of PLAINTIFFS'
367  civil rights under the Banes Civil Rights Act.

368  The acts of MORGAN and GOBLE that are alleged in this Complaint interfered or attempted to
369  interfere with PLAINTIFF' exercise of her rights under the U.S. Constitution's 4th and 14th
370  Amendment, and similar provisions of the Indiana Constitution, thereby entitling PLAINTIFF to
371  the damages set forth in paragraphs above as said damages relate to a cause of action for a
372  violation of their civil rights for the warrantless entry, warrantless removal of their children, in
373  violation of PLAINTIFFS' rights.

374  The punitive damage allegations of paragraph above apply in this claim for relief to all
375  individually-named Defendants in addition to a statutory civil penalty of $25,000.00 is hereby
376  requested.

377  In doing the acts alleged in this Complaint, to all individually-named Defendants knew or should
378  have known that their actions were likely to injure PLAINTIIF, and PLAINTIFF is informed and
379  believe and thereon allege, that the individually-named Defendants intended to cause injury to
380  PLAINTIFF and acted with a willful and conscious disregard of PLAINTIFF rights thus entitling
381  PLAINTIFFS to recover punitive damages.

382                          ***FOURTH CLAIM FOR RELIEF***

383            ***INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS***

384    [PLAINTIFF against All Individually-Named Defendants]

385    PLAINTIFF re-alleges and incorporate paragraphs above inclusive, as though fully set forth at
386    this point, as they relate to a claim for relief for intentional infliction of emotional distress.

387    PLAINTIFF allege the facts and circumstances set forth hereinabove as related to the removal
388    and continued detention of his child, and the Defendants' failures to disclose and/or intentional
389    withholding of exculpatory evidence, failures to disclose and/or intentional withholding of
390    evidence, elements for a claim for relief against defendants PEREZ and NUNN  for intentional
391    infliction of emotional distress, and that the actions of the named individual and Doe Defendants
392    set forth hereinabove were intended to cause, or were engaged in with reckless disregard for the
393    rights of PLAINTIFF and/or the likelihood of causing PLAINTIFF severe emotional distress
394    PLAINTIFF, and did cause such distress and violate PLAINTIFF' rights.

395    PLAINTIFF re-alleges and incorporate paragraphs above inclusive, as though fully set forth at
396    this point, as they relate to a claim for relief for intentional infliction of emotional distress. The
397    punitive damage allegations in above paragraphs apply in this claim for relief to all individually-
398    named Defendants.

399            ***FIFTH CLAIM FOR RELIEF MONELL RELATED CLAIMS***

400    [PLAINTIFFS against CITY and STATE]

401    PLAINTIFF re-alleges and incorporate paragraphs above inclusive, as though fully set forth at
402    this point, as they relate to a claim for relief.

403    At all relevant times herein, Defendant STATE, including through its DCS, and Defendants City,
404    including through its IMPD, established and/or followed policies, procedures, customs, and/or
405    practices (hereinafter collectively referred to as "policy" or "policies") which policies were the
406    cause of violation of PLAINTIFF' constitutional rights granted to them pursuant to 42 U.S.C. §
407    1983, as well as the case of *Monell v. New York Department of Social Services*, 436 U.S. 658
408    (1978), including those under the First, Fourth, and Fourteenth Amendments, including but not
409    limited to:

410  - The policies, practices, and procedures of STATE and of CITY of detaining and/or removing
411  children from their parents without exigent circumstances (imminent danger of serious bodily
412  injury), court order and/or consent of their parents;
413  - The STATE policies, practices, and procedures of causing minor children to be dependents of
414  the STATE, and as to CITY, fabricating and misrepresenting evidence, excluding and/or hiding
415  exculpatory evidence from the court, all in an effort to cause the child to continue to be
416  dependents of the court, removing the child's legal and physical custody from the parent beyond
417  a reasonable period after the basis for any such removal is negated,
418  - The policies, practices and procedures of STATE and CITY of signing and presenting petitions
419  in dependency actions under the penalty of perjury without personal knowledge of the truth
420  and/or accuracy of the allegations contained therein;
421  - The policies, practices and procedures of STATE refusing to provide exculpatory and/or
422  relevant and related evidence, testimony, reports, and information regarding the investigation of
423  juvenile dependency matters, even when properly requested and demanded; and
424  - The policies, practices and procedures of CITY of arresting persons without due process of law,
425  including, but not limited to, arrests without probable cause or an arrest warrant.
426  - By acting with deliberate indifference in implementing a policy, practice, or procedure of non-
427  existent and/or inadequate training, and/or by failing to train their respective officers, agents and
428  employees, in providing the Constitutional protections guaranteed to individuals, including those
429  under the First, Fourth, and Fourteenth Amendments, when performing actions related to the
430  investigation of child abuse and neglect, including dependency type proceedings.

431  Defendant STATE, as well as DCS as agencies or agents of the STATE, and Defendant CITY, as
432  well as IMPD/ as agency or agent of the CITY, had duties to PLAINTIFFS at all times to
433  establish, implement and follow policies, procedures, customs and/or practices which confirm
434  and provide for the protections guaranteed

435  PLAINTIFFS under the United States Constitution, including the First, Fourth, and Fourteenth
436  Amendments; to use reasonable care to select, supervise, train, control and review the activities
437  of all agents, officers, and employees in their employ, including within DCS and/or IMPD; and
438  further, to refrain from acting with deliberate indifference to the Constitutional rights of
439  PLAINTIFF herein so as to not cause PLAINTIFF the injuries and damages alleged herein.

440    Defendants STATE and CITY breached their respective duties and obligations to PLAINTIFF,
441    including, but not limited to, failing to establish, implement and follow the correct and proper
442    Constitutional policies, procedures, customs, and practices, by failing to properly select,
443    supervise, train, control, and review their respective agents and employees as to their compliance
444    with Constitutional safeguards; and by permitting named Defendants, and other defendants
445    whose identities are not yet known, to engage in the unlawful and unconstitutional conduct as
446    herein alleged.

447    Defendant STATE and CITY knew, or should have known, that by breaching the aforesaid duties
448    and obligations that it was foreseeable that it would, and did, cause PLAINTIFFS to be injured
449    and damaged by the wrongful policies and acts as alleged herein and that such breaches occurred
450    in contravention of public policy and as to their respective legal duties and obligations to
451    PLAINTIFFS.

452    Defendant CITY and Defendant STATE also provided inadequate and/or non-existent training,
453    including but not limited to, 1.) training on the Fourth and Fourteenth Amendments as same
454    apply in the context of a child abuse investigation that may involve the removal of children from
455    their parent(s), 2.) the existence and/or use of protective custody warrants provided for under
456    Indiana law, 3.) the emotional trauma and psychological damage to a child from removal, 4.) the
457    clearly established law of this federal circuit on the issues of warrantless removals, exigency,
458    least intrusive means, and the proper investigation before removal of a child.

459
460    PLAINTIFFS re-allege the allegations of paragraphs above as said damages relate to a claim of
461    relief for a violation of his civil rights as stated.

462
463    These actions, or inactions, of Defendants are the legal cause of injuries to PLAINTIFFS as
464    alleged herein, and as a result thereto, PLAINTIFFS have sustained general and special damages,
465    as well as incurring legal research fees, costs, and expenses, including those as authorized by 42
466    U.S.C. § 1983, to an extent and in an amount subject to proof at trial.

467    WHEREFORE, Plaintiff demands judgment against all DEFENDANTS for injunctive relief and
468    actual, special, compensatory damages, attorneys' fees and costs of the litigation in an amount
469    not less than six hundred and fifty thousand dollars ($650,000) deemed at time of trial to be just,
470    fair, and appropriate.

456     PLAINTIFFS re-allege the allegations of paragraphs above as said damages relate to a claim of
457     relief for a violation of his civil rights as stated.

458
459     These actions, or inactions, of Defendants are the legal cause of injuries to PLAINTIFFS as
460     alleged herein, and as a result thereto, PLAINTIFFS have sustained general and special damages,
461     as well as incurring legal research fees, costs, and expenses, including those as authorized by 42
462     U.S.C. § 1983, to an extent and in an amount subject to proof at trial.

463     WHEREFORE, Plaintiff demands judgment against all DEFENDANTS for injunctive relief and
464     actual, special, compensatory damages, attorneys' fees and costs of the litigation in an amount
465     not less than six hundred and fifty thousand dollars ($650,000) deemed at time of trial to be just,
466     fair, and appropriate.

467
468
469
470                       Isi Chito Lusa Yananta
471                            Plaintiff
472   _____
473   STATE OF TENNESSEE }
474   COUNTY OF DAVIDSON}
475

476                         VERIFICATION

477     I, Isi Chito Lusa Yananta verify that I have developed and submitted the allegations contained in the
478     Verified Complaint, that I have personal knowledge of the facts, and that the facts stated in the Verified
479     Complaint are true, except those facts alleged upon information and belief, as to those facts, believe they
480     are true. Attesting before the state Notary representatives is required by the United States and is accepted
481     with explicit rights reserved, due to lack of diversity applications available for indigenous people of
482     America.

483
484
485   Notary Public

486

487   My Commission Expires:

NOTARY SEAL

DEBBIE L. DREWEK
STATE OF TENNESSEE
NOTARY PUBLIC
BEDFORD COUNTY





# TALI BAHA FALAHTUCHI OKHINA
# AKAWENC MEHERRIN TRIBE
### "Treaty of Camp Holmes, 1853 (7 Stat. 474)"
### TREATY OF 1729 (North Carolina)

## JUDICIAL NOTICE OF TRIBAL ENROLLEMENT

I am Tushkahumoc Xelup, Director General and Plenary representative for the National Association for the Advancement of Indigenous Peoples International (NAAIPi) and Chief Judicial Advocate and enrolled clan member of the AKAWENC MEHERRIN tribe. The tribe is a beneficiary of the Treaty of Camp Holmes, Treaty of 1729 North Carolina Statutes at large, PUBLIC LAW 93-638 and NAAIP Department of Commerce identity correction; file number15-0387, hereby issue this Constructive and Judicial Notice that Hakeem Shabazz listed in Superior Court Case #49G061801 - F5-000218, is tribally known as Isi Chito Lusa Yananta, *an enrolled clan member of the* Tali Baha Falatuchi Okhina, and an *enrolled tribal member of the Akawenc Meherrin* tribe; the Akawenc Meherrin is the sister tribe to federally recognized Meherrin Nation located in North Carolina. The Sachem Yodagent Uwa of the Akawenc Meherrin tribe is a direct lineal descendant beneficiary of Meherrin Nation people, chiefs and blood cousin of current Chief, 'Wayne Brown; with same rights bestowed under law.

Per the language of the Indian Health Manual, recognizing tribal rights and benefits, Section 2-1.2 PERSONS TO WHOM SERVICES MAY BE PROVIDED states:

A person may be regarded as within the scope of the Indian Health program if he is not-otherwise,

20  excluded therefrom by provision of law, and:

21  A) Is of Indian and/or Alaska Native descent as evidenced by one or more of the following factors:

22  1) Is regarded by the community in which he lives as an Indian OR Alaska Native;

23  2) Is a member, enrolled or otherwise, of an Indian or Alaska Native Tribe or Group under Federal

24  supervision;

25  3) Resides on tax-exempt land or owns restricted property;

26  4) Actively participates in tribal affairs;

27  5) Any other reasonable factor indicative of Indian descent; or

28  B) Is an Indian of Canadian or Mexican origin, recognized by any Indian tribe or group as a

29  member of an Indian community served by the Indian Health program; or

30  C) Is a non-Indian woman pregnant with an eligible Indian's child for the duration of her

31  pregnancy through post partum (usually 6 weeks); or

32  D) Is a non-Indian member of an eligible Indian's household and the medical officer in charge

33  determines that services are necessary to control a public health hazard or an acute infectious

34  disease which constitutes a public health hazard.

35

36  Per Section 2-2.1 A-1,4 & 5 I, all members of the AKAWENC MEHERRIN tribe, are eligible for

37  health services through the Indian Health Service Program as we are recognized by North Carolina,

38  and surrounding state communities as Indians (1), participate in the tribal affairs of the

39  AKAWENC MEHERRIN tribe (4) and can show direct relationship to members of the Federally

40  Recognized "Meherrin Nation" Indian Tribe (5).

41

42  Isi Chito Yananta and his child are in fact enrolled, adopted and made part of the Akawenc

43  Meherrin through treaty with the Tali Baha Falatuchi Okhina Clan, and are not subject to colorable

44  law or state claims without actual evidence of an alleged offense. This is judicial notice, advising

45  State of Indiana of the actual and factual protections provided to tribes under federal ATS, and

46  tribal law, as provided by "Courts of Tribal Offenses", and UNDRIP.

47

48  *In the abovementioned matter, the State of Indian and the court has elected to place burden upon*

49  *itself in making a determination as to Indian status and rights of Hakeem Shabazz. The state has*

50  *allowed and perpetuated a false arrest of Isis Yananta and has held his child from him in violation*

51  *of tribal rights.*

52    This attempt by the tribe is made as a means to acquire the "due process" provided by your courts

53    in accordance with ICWA, federal law and international treaty law. We are not looking to prolong

54    these issues and are willing to resolve these issues by simply providing information as may be

55    required. As foreign national Americans, we understand our remedy to be found in the Article III

56    jurisdiction, but are not looking to pursue such options at this time, therefore we are requesting that

57    an immediate hearing be established to correct "ORDER" which is holding an enrolled member of

58    the Akawenc Meherrin tribe; the "Order" lacks jurisdiction.

59

60    The Court is encouraged to review our understanding of Article III jurisdiction, as it is the intent of

61    the tribe to exercise its rights under Article III to resolve instances of racial discrimination,

62    continued deprivation of custodial rights provided to tribes and failure to follow federal law in

63    relation to ICAW, causing international rights deprivations due to the perpetuation of

64    environmental racism and paper genocide, which are violations under the Alien Tort Statute in

65    Article III venue. These are violations which were all established under the failed Racial Integrity

66    *Act [repealed] created by the state of Virginia.*

67

68    DEFINITIONS OF ARTICLE III JURISDICTION:

69

70    The Court is invited to go to UNITED STATES CODE and read first §91 and then examine every

71    other district court to find one ordained and established under Article III in all the continental

72    states of the United states.  In "CHAPTER 5—UNITED STATES CODE, DISTRICT COURTS";

73    ending with the paragraph below: "HISTORICAL AND REVISION NOTES." If you were not

74    aware of pages 42 and 43 of Title 28 U.S.C., or if you have trouble reading or printing out these

75    pages, you can also access Title 28 U.S.C. by going to http://uscode.house.gov/title_28.htm.

76

77    The District Court for the United States of America, District of Columbia [Washington, D.C.] is

78    the proper venue and the tribal court has examined the statute law that created every United States

79    district court and has found only one instance where Congress appeared to ordain and establish an

80    Article III United States district court in any state.

81

82    In 1959, the Congress created an Article III United States district court for Hawaii, but made no

83    provision for Article III judges by specifically precluding the President from appointing them. The

84    Code specifically provides for territorial judges for the Hawaiian Article III court. Title 28

85  U.S.C.—Judiciary and Judicial Procedure has been enacted into positive law so the Code shows
86  the same kinds of courts as are found in the statutes. Chapter 5 of Title 28 U.S.C.—District Courts
87  consists of Sections 81 through 144. The names of all 50 states of the Union will be found from
88  Sections 81 to 131 and in addition in Section 88 will be found the District of Columbia and in
89  Section 119 Puerto Rico.

90
91  The nature of the astounding revelations in this matter obviously requires this unique format where
92  facts are presented in support of the proposition that a non ARTICLE III court existing in any state
93  of the Union cannot exercise Article III judicial power. This kind of presentation invites a fact that
94  proves this position. Example of a fact: Title 28 U.S.C. is territorial law; this fact will be supported
95  by material found in the notes to §91. Those in federal litigation, or who are contemplating that
96  exercise, should be aware that legal justice is available only from courts that have judicial power.
97  Any litigant from this point, in any United States district court in any state of the Union is warned
98  that these courts have no Article III, Section 2 judicial power, whatsoever.

99
100 The United States district courts of the several states are not judicial courts and the judges that sit
101 in those courts are not Article III judges and these judges cannot adjudicate matters of ARTICLE
102 III. These Judges of these courts are appointed for life terms, but obtain judicial powers only when
103 appointed to judicial courts with Article III power. District courts and district court judges of the
104 United States have been mistaken for Article III courts and judges since the Judiciary Act of 1789.
105 The mistaken belief that a court has jurisdiction is sufficient to confer it when everyone is equally
106 *mistaken; but that jurisdiction remains what it is and not what it is mistaken to be.*

107
108 Names are labels, and like book covers, do a notoriously bad job of identifying contents, and just
109 as a book cannot be accurately judged by its cover, a federal trial court is not accurately described
110 by the name of the state where it is located. The names of the federal trial courts in the several
111 states are labels that are fully explained in the first sentence of the "Historical and Revision Notes"
112 that are part of the law: "Sections 81—131 of this chapter show the territorial composition of
113 *districts and divisions by counties as of January 1, 1945." Since the conclusion of the Civil War,*
114 the States of the Union are the federal territory within the state and the state officers who have
115 taken an oath to uphold the United States Constitution.

116
117 The subject matter of Chapter 5 of Title 28 U.S.C. is the territorial composition of districts and

118    divisions by counties as of January 1, 1945. Of the courts named in Sections 81—131, which can
119    only be the areas subject to the exclusive jurisdiction of the United States—federal territory, these
120    areas consist of places like the national parks, military bases, federal buildings and federal
121    courthouses. Crimes that occur on or in these federal places are federal crimes, and the federal
122    courts for the districts are the proper forum for trials of those crimes. Article III judicial power is
123    not needed for those courts, and those courts are certainly without such power. There is no room
124    for legalistic interpretations of Chapter 5.

125
126    The only legislation, since the first judiciary act on September 24, 1789, to create an Article III
127    United States district court is found in §91 of Title 28 U.S.C. This section documents the change of
128    a territorial court to an Article III court, without actually giving the court Article III judicial power.
129    Nothing can be done to change the nature of these courts in the several states without the direct
130    intervention of Congress by legislation.

131
132    A judge without judicial power can do nothing to change the jurisdiction of the court where he
133    presides. Any litigant or Petitioner in any federal court proceeding, who attempts to have the
134    United States district court consider the issues raised in action, should be aware that the American
135    Law Institute's Restatement of Judgments, holds that such a litigant is bound by the court's ruling.
136    A federal judge sitting in a trial court in any United States district court is without judicial power,
137    while such an official can be a life-tenured bureaucrat, such an official cannot be expected to rule
138    other than administratively. All United States District Territorial Courts are under "Color of Law".

139
140    No United States district court (legislative) in any state may lawfully exercise Article III court
141    power. *The lawful jurisdiction of the federal district court (Article III) or courts is limited to those*
142    *places where Congress has exclusive jurisdiction*. It is also clear that federal judges and federal
143    courts have been used in the past by the federal government to create the appearance of an Article
144    III tribunal, but the transferring of an Article III judge to a state territory, does not create an Article
145    III court or jurisdiction. The federal courts within the several states, known as United States
146    District Courts are federal and territorial, in that, these courts implement administrative law on
147    territory exclusively under the jurisdiction of the United States of America *Corporate / legislative*, and not
148    Congress *Constitutional*. ARTICLE III is the jurisdiction for claims brought by American Aborigine,
149    the American Indian.

150    Article III judicial power imposes self-restraint on judges. Only judges appointed to Article III
151    courts may exercise the judicial power of the United States found in Article III, Section 2. Judicial
152    power imposes restraints on the judges that have it and that serves as some protection from judicial
153    abuse, which includes refusing to accept and act upon this Judicial Notice; such actions by this
154    court would be unlawful. All justices appointed to the Supreme Court of the United States are
155    genuine Article III judges, and the Aborigine rights of AKAWENC MEHERRIN tribe are
156    established under Article III jurisdiction, therefore the demand for proper jurisdiction must be met
157    in an Article III Court or Tribal Court.

158
159    AKAWENC MEHERRIN tribe is aware of the systemic abuse of tribal rights by the various states,
160    and the AKAWENC MEHERRIN tribe believes the court has made a rush to judgment and has
161    allowed a clear violation violated DUE PROCESS, in holding Isi Yananta liable as an accused
162    DEFENDANT, accountable for a botched false arrest and fraudulent taking of BOND MONEY
163    when there was no existing "WARRANT" or actual charges, and was not yet established under the
164    law. With this proper and timely issued "JUDICIAL NOTICE", the court is obligated to correct its
165    position concerning the violations against Isi Chito Yananta, and correction should be made
166    concerning the continued holding of BABY XXXXXX without delay.

167
168    Congress has provided that territorial Title 28 U.S.C. judges are appointed to the United States
169    district court (legislative) for the district of Hawaii, and are to be appointed to an Article III court.
170    *The district judges for the district of Hawaii are specifically to be appointed by the President*
171    *pursuant to sections 133 and 134 of title 28, United States Code, <u>as officers of the United States,</u>*
172    *<u>but not as judges of an Article III court</u>*. These two sections are also to be used in appointing any of
173    seven judges of the Puerto Rico district should a vacancy occur there. It can be deduced that
174    appointment pursuant to § 133 and 134 of Title 28, will always produce territorial judges.

175
176    The Hawaii judicial district established in § 91 of the Judicial Code of 1948 was a territorial court.
177    The United States District Court of Hawaii is not a true United States court established under
178    Article III of the Constitution to administer the judicial power of the United States, Balzac *v. Porto*
179    *Rico, 258 U.S. 298, 312 (1922)*. In *Balzac*, Chief Justice William Howard Taft stated that United
180    States District Court for *<u>Arecibo</u>*, Porto Rico, as Puerto Rico was known then, "created by virtue of
181    the sovereign congressional faculty, granted under Article IV, § 3, of that instrument, of making all

182  needful rules and regulations respecting the territory belonging to the United States."

183
184  Puerto Rico is the Commonwealth of Puerto Rico and it has not been incorporated into the United
185  States though its inhabitants are United States citizens. The inclusion of Puerto Rico in Chapter 5
186  as § 119 does not make the district court for Puerto Rico an Article III court, because Puerto Rico
187  has not been incorporated into the Union. Puerto Rico fits comfortably among the names of the 50
188  states because the geographical areas are mini federal territories or federal enclaves.

189
190  Only Hawaii has an Article III district court, and that court cannot function as one, because no
191  ARTICLE III judges are appointed to that court; no other state has an Article III court. The federal
192  district courts of California fall squarely within the mold of the federal courts of the 49 states that
193  have no Article III district courts where Indian claims should be addressed.

194
195  The use of the term, "district courts of the United States" refers to Article III courts. There are no
196  more than two "district courts of the United States." There is no doubt that the district court for
197  Hawaii is an Article III court—that's one. The § 88 court for the District of Columbia is another.

198
199  The Historical and Revision Notes to that section make it clear that the District of Columbia
200  district court is a constitutional court established and ordained under Article III. The existence of at
201  least two "district courts of the United States" permits the general usage of language that refers to
202  the "district courts of the United States" as Article III courts.

203
204  Legal scholars assume without justification that the federal district courts are Article III courts.
205  AKAWENC MEHERRIN tribe has discovered, and proven, that no responsible public federal
206  officer has ever publically questioned these assumptions. In all the legal literature that AKAWENC
207  MEHERRIN tribe examined, the status of the United States district courts as Article III was
208  assumed despite all the contrary authoritative evidence.

209
210  The United States Supreme Court in two cases: Balzac v. Porto Rico, 258 U.S. 298 (1921) and
211  Mookini v. United States, 303 U.S. 201 (1938) made it clear that a *"district court of the United*
212  *States" described a court created under Article III* and a *"United States district court" described*
213  *a territorial court*. The former identified a constitutional court of the United States exercising the
214  judicial power of the United States and the latter merely identified a court for a district of the

215  government of the United States.

216

217  The United States district courts are territorial and without judicial power. This has been so since

218  the Judiciary Act of 1789.  As such, the United States District Court for the District of California

219  lack the jurisdiction to properly address AKAWENC MEHERRIN tribe's claim and must provide

220  an Article III Judge in an Article III venue with haste and in the absence, the court must dismiss.

221  The proper venue for addressing AKAWENC MEHERRIN tribe's Law of Nations claims is in the

222  *District Court* of the United States of America, District of Columbia {*Washington, D.C.*].

223  FEDERAL ICWA

224
225                                 C a v e a t
226

227  It is the tribes understanding that the Court cannot assume Personam nor Subject Matter

228  jurisdiction without a proper party to the claim. The 5th Amendment of the Constitution required

229  that all persons within the United States must be given due process of the law and equal protection

230  of the law. "Your law also provides that once state and federal Jurisdiction has been challenged, it

231  must be proven. " Main v. Thiboutot, 100 S. Ct. 2502 (1980), Jurisdiction can be challenged at any

232  time. "and " Jurisdiction, once challenged cannot be assumed and must be decided. " Basso v. Utah

233  Power & Light Co. 495 F 2nd 906, 910; " Once challenged, jurisdiction cannot be assumed, it must

234  be proved to exist.

235

236  " Stuck v. Medical Examiners 94 Ca 2d 751. 211 P 2d 389; "There is no discretion to ignore that

237  lack of jurisdiction. " Joyce v. Us, 474 F2d 215; The burden shifts to the court to prove jurisdiction.

238  "Rosemond v. Lambert, 469  F2d  416; Where the court is without jurisdiction, it has no authority

239  to do anything other than to dismiss the case."; Fontenot v. State, 932 S. W.2d 185 " Judicial action

240  without jurisdiction is void. "-Id (1996); " Criminal law magistrates have no power of their own

241  and are unable to enforce any ruling. " V.T.C.A., Government Code sec. 54.651 et seq., Davis v.

242  State, 956 S. W. 2d 555 (1997) Basso v. UPL, 495 F.2d 906.

243

244  Under federal Law, which is applicable to all states, the U.S. Supreme Court stated that "if a court

245  is without authority, its judgments and orders are regarded as nullities. They are not voidable, but

246  simply void, and form no bar to a recovery sought, even prior to a reversal in opposition to them.

247  They constitute no justification and all persons concerned in executing such judgments or



STATE OF INDIANA
IN MARION SUPERIOR COURT
JUVENILE DIVISION

FILED

JAN 3 0 2018   (77)

Myla a. Eldridge
CLERK OF THE MARION CIRCUIT COURT

Hakeem Shabazz-El. Trustee,

    **Respondent,**

        Vs.

**STATE OF INDIANA**, by and through
MARION COUNTY DEPARTMENT OF
CHILD SERVICES
a Indiana public body corporate,

    **Plaintiff-in-error.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Pro Per
PRAY FOR CUSTODY OF CHILD PERSUANT
THE INDIAN WELFARE ACT , 25USC§1911

CAUSE NO.  49D09-1709-JC-003038

**JUDGE BURLESON**
Fourteenth Amendment; Article VI/Universal
Declaration of Human Rights & Rights of
Indigenous Peoples, The Foreign Sovereignty
Immunities Act 28 USC 1601, The International
Covenant of Civil & Political Rights, and THE
INDIANA REPUBLIC CONSTITUTION

Presented by: Hakeem Shabazz-EL, Trustee, Executor
        In Pro Per, Sui Juris
        2235 Sadler Ave.
        Nashville Tn. U.S.A.
        Real Land: Turtle Island
        270-331-8771

                                                                               /

### <u>PRAY FOR CUSTUDY OF NATIVE AMERICAN CHILD PURSUANT TO</u>
### <u>25 USC §1911 AND NOTICE THAT Ariya Nyla Williams IS OF INDIAN DECENT</u>

MY HONORS, COMES NOW, Noble Hakeem Shabazz-El, Autochthonous living

being, in Propria personam, herein 'Respondent', moving the court to award custody

of the Indigenous American child: Ariya Nyla Williams, to her Father, who is an

Indian with his fore Parents listed on the Dawes Roll and current tribal affiliation.

This action being brought is also giving Notice of the Autochthonous status of the

father Hakeem Shabazz-EL and child, invoking the Indian welfare act to secure transfer of custody to the Father and the his Tribe.

## <u>REASON TO GRANT CUSTODY</u>

1. The citizenship of Ariya Williams does not affect or impair by any manner, the right for Hakeem Shabazz-EL to gain custody pursuant to 8 USC **§1401(b);**

2. the State's agents have visited the domicile of Noble Hakeem Shabazz-El **and have determined that it would be a safe and secure place for the child in question.**

3. Pursuant to 25 USC **§** 1911(b)(c), the child Ariya Williams should be must be given to her father, whom has good standing with his Tribe: (b)TRANSFER OF PROCEEDINGS; DECLINATION BY TRIBAL COURT

4. In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.

5. (c)STATE COURT PROCEEDINGS; INTERVENTION
   In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.

## REMEDY AND CONCLUSION

Respondent moves to invoke the Indian Welfare Act and have it applied in this case. WHEREFORE: custody of His daughter be ruled in his favor and Ariya Williams ordered to be released to Respondent's, her father's custody.

### VERIFICATION

I 'Affirm' that all statements, facts, and information, presented in this Affidavit are correct and true; and are presented as Evidence 'for the record'. I, furthermore, state that the fore said Exhibits, Evidence, Information and Facts are placed in Evidence in this case, are being presented in good faith and Affirmed as truth, to the best of my knowledge and belief.

Hakeem M. Shabazz-EL©
Authorised Representative.
All Rights Reserved.

CASE NUMBER: 49G06-1801-F5-000218   FILED: 1/3/2018

STATE OF INDIANA
MARION COUNTY, ss:

IN THE MARION SUPERIOR COURT
CRIMINAL DIVISION

Cause No: 49

| STATE OF INDIANA | ) |
| | ) |
| vs. | ) |
| | ) |
| HAKEEM MALIK SHABAZZ-EL Jr. | |
| B/Male | |
| DOB 11/20/1986 | |

INFORMATION
COUNT I
STRANGULATION
I.C. 35-42-2-9(b) and I.C. 35-42-2-9(c)
A LEVEL 5 FELONY
COUNT II
BATTERY RESULTING IN BODILY
INJURY TO A PREGNANT WOMAN
I.C. 35-42-2-1(c)(1) and I.C. 35-42-2-1(g)(3)
A LEVEL 5 FELONY
COUNT III
DOMESTIC BATTERY
I.C. 35-42-2-1.3(a)(1) and I.C. 35-42-2-1.3(b)(2)
A LEVEL 6 FELONY
COUNT IV
DOMESTIC BATTERY
I.C. 35-42-2-1.3(a)(1)
A CLASS A MISDEMEANOR
COUNT V
CRIMINAL MISCHIEF
I.C. 35-43-1-2(a)
A CLASS B MISDEMEANOR

On this date, the undersigned came before the Prosecuting Attorney of the Nineteenth Judicial Circuit and, being duly sworn (or having affirmed), stated that in Marion County, Indiana

COUNT I

On or about December 6, 2017, HAKEEM SHABAZZ-EL Jr., knowing that Dominique Williams was pregnant did, in a rude, insolent or angry manner, knowingly or intentionally apply pressure to the throat or neck of Dominique Williams in a manner that impeded normal breathing or blood circulation of Dominique Williams;

COUNT II

On or about December 6, 2017, HAKEEM SHABAZZ-EL Jr., knowing that Dominique Williams was pregnant, did knowingly touch Dominique Williams, a pregnant woman, in a rude, insolent, or angry manner by pushing and/or throwing and/or headbutting her resulting in bodily injury, that is: pain and/or abrasion and/or cuts and HAKEEM SHABAZZ-EL Jr. knew that Dominique

CASE NUMBER: 49G06-1801-F5-000218   FILED: 1/3/2018

Williams was pregnant;

COUNT III

On or about December 6, 2017, HAKEEM SHABAZZ-EL Jr., being at least eighteen (18) years of age, did knowingly touch Dominique Williams, a family or household member, in a rude, insolent, or angry manner by pushing and/or throwing and/or headbutting her and HAKEEM SHABAZZ-EL Jr. committed said offense in the presence of a child less than 16 years of age, knowing that the child was present and might be able to see or hear the offense;

COUNT IV

On or about December 6, 2017, HAKEEM SHABAZZ-EL Jr. did knowingly touch Dominique Williams, a family or household member, in a rude, insolent or angry manner by pushing and/or throwing and/or headbutting her;

COUNT V

On or about December 6, 2017, HAKEEM SHABAZZ-EL Jr. did, without the consent of Dominique Williams, recklessly, knowingly or intentionally damage or deface the property of Dominique Williams, to-wit: window;

all of which is contrary to statute and against the peace and dignity of the State of Indiana.

I swear or affirm under penalty of perjury as specified by I.C. 35-44.1-2-1 that the foregoing representations are true.

_____
Affiant

January 3, 2018
Date

**TERRY R. CURRY**
Marion County Prosecutor
19th Judicial Circuit

State's Witnesses:
OFF. F. GOBLE
DET. C. KING
OFF. J. MONTGOMERY
Dominique Williams

_____
Deputy Prosecuting Attorney

CASE NUMBER: 49G06-1801-F5-000218    FILED: 1/3/2018

# AFFIDAVIT
## FOR PROBABLE CAUSE

STATE OF INDIANA, COUNTY OF MARION, SS:

Detective Charles King swears (affirms) that:

*On 12/08/17, Ms. Williams came into 555 King Av., to make a battery report by her baby's father. She told me that on 12/6/17, her daughters father came over knocking on the porch door and window. She let Mr. Shabaz-el into the porch. He demanded that she tell him where the guy is that she is pregnant by. He instantly got in her face demanding where the N....r was staying. He then grabbed her throat with his right hand and began to choke her. He then puts her in a head lock and pushed her against the wall and window. The window did break. He also head-butted her face with and busted her lip. To get him away from he, she told me that she would show him where he is staying. They got to the car and he grabbed her coat and threw her onto the ground. This caused abrasions to both knees. He then left the scene.*

*E.T. Montgomery came to the precinct and took pictures of Ms. Williams injuries. Ms. Williams does have pictures of her injuries from that night.*

*A purple Sheet is Attached.*

On December 14, 2017 Detective Charles King with the Indianapolis Metropolitan Police Department Domestic Violence Unit took an audio recorded statement over the phone from B/F Dominique Williams. Ms. Williams stated she was assaulted by the father of her child. She identified him as B/M Hakeem Shabazz. The two have a child in common. They dated for approximately one year. The relationship ended in March of 2015. The two never lived together.
On December 6, 2017 Mr. Shabazz came to her residence located in the 1200 block of Pershing Avenue. He had their daughter with him. Ms. Williams invited him into her residence. He immediately started asking were the male was that she was currently seeing and is pregnant by. Mr. Shabazz knew Ms. Williams was pregnant. He grabbed Ms. Williams with his right hand around her throat and pushed her against a window, breaking the window. This caused pain to her head and throat. She stated she could speak but made it difficult to breath. He then put Ms. Williams into a headlock and threw her into the corner of the room. He then head-butted Ms. Williams in the face four times and grabbed Ms. Williams head and started to slam her head against the wall approximately five times. Ms. Williams stated she was starting to lose consciousness. Ms. Williams told Mr. Shabazz she would take him to where the male was that she was currently seeing. The two went outside to his car. Ms. Williams attempted to get his daughter out of the car. He stated are you taking her from me. He grabbed Ms. Williams by her jacket and pulled her onto the ground. This caused abrasions and pain to her knees. Mr. Shabazz left the scene with their daughter. Ms. Williams did not feel that their daughter was in danger. Their daughter was identified as B/F A. W. age 2.
Mr. Shabazz was concerned that Ms. Williams would call the police. He dropped his daughter off at DCS for Ms. Williams to pick up. Mr. Shabazz lives in Tennessee.
All events occurred in Indianapolis, Marion County, State of Indiana.

I swear (affirm), under penalty of perjury as specified by IC 35-44.1-2-1, that the foregoing representations are true.

/s/Charles King
_____
AFFIANT

DATED: __December 27, 2017_____

| STATE OF INDIANA | ) | IN THE MARION SUPERIOR CRIMINAL |
| | ) SS: | COURT 6 |
| COUNTY OF MARION | ) | |

STATE OF INDIANA )

**F I L E D**
October 2, 2018
*Myla A. Eldridge*
CLERK OF THE COURT
MARION COUNTY
TG

v. )

HAKEEM MALIK SHABAZZ-EL )
JR.

CAUSE NO. 49G06-1801-F5-000218

### ORDER ON MOTION TO DISMISS

The Court having examined State's Motion to Dismiss said Motion is in the following words and figures, to-wit:

(H.I.)

The Court being duly advised, now sustains said motion.

**October 2, 2018**                    *Jeffrey L Marchal*  Mag.

Date                                              Judge
                                                       Marion Superior Criminal Court 6

Filed: 10/1/2018 4:10 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

| STATE OF INDIANA | ) | | IN THE MARION SUPERIOR CRIMINAL |
| | ) SS: | | COURT 6 |
| COUNTY OF MARION | ) | | |

| STATE OF INDIANA | ) |
| | ) |
| v. | ) |
| | ) |
| HAKEEM MALIK SHABAZZ-EL JR. | ) |

CAUSE NO. 49G06-1801-F5-000218

## MOTION TO DISMISS

The State of Indiana moves the Court:

To dismiss all counts in the above-captioned case:     ___x____
To dismiss the following counts in the above-captioned case:   _____

Count 1: Strangulation a Level 5 Felony
Count 2: Battery Resulting in Bodily Injury to a Pregnant Woman a Level 5 Felony
Count 3: Domestic Battery a Level 6 Felony
Count 4: Domestic Battery a Class A Misdemeanor
Count 5: Criminal Mischief a Class B Misdemeanor

for the following reasons:

| Code | Reason | |
|---|---|---|
| **01** | **Evidentiary Problems** | |
| 02 | Essential Police Witness Not Present | _____ |
| 03 | Essential Civilian Witness Not Present | _____ |
| 04 | Plea Agreement | |
| 05 | Diversion | |
| 06 | State Declines Prosecution | |
| 07 | Restitution Made to Victim | |
| 16 | Good Defense | |
| 31 | Unable to Locate Essential Witness | |
| 65 | Defendant Deceased | |
| 67 | Victim Recants | |
| — | Other: _____ | |

10/01/2018
Date

/s/ Linda A Major _____
Deputy Prosecuting Attorney

The Court having examined said Motion to Dismiss, and being duly advised, now sustains said motion.

_____
Date

_____
Judge
Marion Superior Criminal Court 6

CASE NUMBER: 49G06-1801-F5-000218

if found guilty.

VIOLATION OF THIS ORDER CONSTITUTES A VIOLATION OF IC 35-33-8-3.2, WHICH COULD RESULT IN REVOCATION OF BOND OR RELEASE ON PERSONAL RECOGNIZANCE.  VIOLATION OF THIS ORDER ALSO CONSTITUTES A VIOLATION OF IC 35-46-15-1, AND MAY ALSO SUBJECT THE DEFENDANT TO FEDERAL PROSECUTION. THIS ORDER IS VALID IN ALL 50 STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, AND UNITED STATES TERRITORIES.

Dated:     January 3, 2018

_____
Judge

### STATEMENT OF DEFENDANT

I have read the above Order and I understand it.  I also understand that violation of this Order constitutes a violation of IC 35-33-8-3.2, punishable by a revocation of my bond or release on my personal recognizance.  I further understand that violation of this Order may cause additional charges to be filed against me.  A copy of this Order has been given to me this _____23RD_____ day of __JAN____, 20_18_.

X _Hakeem Shebazz-EC_
Signature of Defendant

Thursday
7:30 AM



## MARION COUNTY PROSECUTING ATTORNEY

### TERRY R. CURRY, PROSECUTOR
251 E. OHIO ST., SUITE 160
INDIANAPOLIS, INDIANA 46204
PHONE (317) 327-3522  • FAX (317) 327-3531

**TO:**    **ALL DETECTIVES**
**RE:**    **DISCLOSURE OF POTENTIALLY EXCULPATORY INFORMATION AND
NOTICE TO CONSULATE OF ARRESTED FOREIGN NATIONAL**

As part of the court-ordered discovery process, deputy prosecutors are required to disclose ANY AND ALL evidence that MIGHT be construed as giving favorable treatment to a State's witness and/or a defendant in a criminal proceeding.  [*This includes, but is not limited to such things as:  agreements not to file charges; reductions in bond; sentence modifications; requests for witness relocation, etc.  IF you are unsure whether or not something could be construed as" leniency" or "consideration," please let the screening deputy know about it, and the deputy will determine whether or not the information needs to be listed.*]

In addition, when an arrested person is a foreign national, law enforcement agencies are required to follow the procedures set forth in the Vienna Convention on Consular Relations (VCCR) to notify the defendant of his/her right to have his/her consulate notified of the arrest. Notice must be given to that consulate only if the defendant so requests, or if the country requires notice.

Under Indiana law, any information known to the police officer is imputed to the deputy prosecutor.  To make sure the deputy prosecutor handling the case is fully informed, please complete, date, and sign the following:

**STATE OF INDIANA v.** Haleem Shabazz    **CAUSE NO.** 49G06-1801-F5-000218

I ____ [am] / __X__ [am not] aware of any favorable treatment or consideration given to any State's witness or any defendant.  [*If favorable treatment or consideration was given, please describe in detail, including the name of each witness and the consideration given to the witness.*]

_____

_____

____If the defendant is a foreign national, he/she_____ [has] / _____ [has not] been notified of his/her right to have the consulate of his/her country notified of the arrest.  [*Please provide the name of the country of which the suspect is a citizen.  If the defendant is in custody, please provide the name, address, and telephone number of the consulate that was notified.*]

_____

_____

_____

Detective Signature: /s/ Charles King    Date: 12/27/2017



# Indianapolis Metropolitan Police Dept
## Case Report

| LEA Case #: | Agency: | Case Status: | Assignment Status: | Next Update Date: |
|---|---|---|---|---|
| PD17138481 | IMPD Domestic Violence Unit | Pending Review | Review | 01/09/2018 |

**Comments:**
Domestic battery report taken by district officer.  The case was assigned by Sgt. Marshall.

The case file was given to Prosecutor Elizabeth Filipow for review.

## Officers

| Name: | Agency: | Role: |
|---|---|---|
| King, Charles - Patrol Officer #20202 | IMPD Domestic Violence Unit | Lead Investigator |

## Incident People

### Suspect / Offender                                     PD17138481 Supp # 0

| | | | No Mugshot Available |
|---|---|---|---|
| **Name:** Shabaz-el, Hakeem | **Race:** Black or African | **Sex:** Male | |
| **Age At Occurence:** 26 | **Date of Birth:** 11/20/1991 | **DL #:** | |

**Address:**

**Phone(s):**
Cellular:270-331-8770

### Victim                                                 PD17138481 Supp # 0

| | | | No Mugshot Available |
|---|---|---|---|
| **Name:** Williams, Dominique | **Race:** Black or African | **Sex:** Female | |
| **Age At Occurence:** 26 | **Date of Birth:** ███████ | **DL #:** ███████ | |

**Address:** ████████████████

**Phone(s):**
Cellul██████████████

## Case Notes

| Activity Type: | Officer: | Date/Time: |
|---|---|---|
| Case Note | King, Charles #20202 | 12/12/2017 18:47 |

An attempt was made to contact the victim at the number listed in the report.  A male answered the phone and advised it was a wrong number and did not know the victim.

| Activity Type: | Officer: | Date/Time: |
|---|---|---|
| Case Note | King, Charles #20202 | 12/12/2017 19:03 |

The following items were acquired:

CAD

No prior reports

Criminal history suspect / victim

BMV suspect / victim

Triple I suspect / victim

Purple sheet

| Activity Type: | Officer: | Date/Time: |
|---|---|---|
| Case Note | King, Charles #20202 | 12/13/2017 15:54 |

An officer was sent to the address listed for the incident in the report to make contact with the victim.  The run was CAD .1787.

Officer D. Pervine (D251) was able to make contact with the victim.  She advised him she will contact Detective King.

| Activity Type: | Officer: | Date/Time: |
|---|---|---|
| Victim Interview | King, Charles #20202 | 12/27/2017 13:44 |

On December 14, 2017 Detective Charles King with the Indianapolis Metropolitan Police Department Domestic Violence Unit took an audio



**DV PURPLE SHEET**
Indianapolis Metropolitan Police Dept

| Officer |
|---|
| Ford Goble(Badge #: G5931) - IMPD Southwest District |
| **Agency** |
| IMPD Southwest District |
| **Date Created** |
| 12/08/2017 1742 Hrs |

| Occurrence Date/Time | Report Date/Time | Report Number |
|---|---|---|
| 12/06/2017 1950 – Hrs | 12/08/2017 1643 Hrs | PD17138481 |

| Location | County |
|---|---|
| 1215 North PERSHING Avenue INDIANAPOLIS, IN | Marion |

| Latitude / Longitude | Common Place Name |
|---|---|
| 39.784693 / -86.199669 | W 12TH ST & W 14TH ST |

## Victim
### Victim(#1)
### Victim

**Victim**

**Name:** Dominique Williams  **Sex:** Female  **Race:** Black or African American  **DOB** ▮▮▮  **Age:** 26

**DL #:** ▮▮▮▮ (Indiana)

**Observations**

ABRASION(S), COMPLAINT OF PAIN

**Other**

**Victim under the influence of**

No signs of intoxication

## Suspect
### Suspect(#1)
### Suspect

**Suspect**

**Name:** Hakeem Shabaz-el  **Sex:** Male  **Race:** Black or African American  **DOB:** 11/20/1991  **Age:** 26

**Observations**

**Other**

**Suspect under the Influence of**

## Relationship between Victim and Suspect

**Relationship between Victim and Suspect**

CHILD IN COMMON

| Length of Relationship - Year(s) | Length of Relationship - Month(s) | Date Relationship Ended | Length of Cohabitation - Year(s) | Length of Cohabitation - Month(s) |
|---|---|---|---|---|
| | | | | |

## Children
### Children(#1)
### Child

**Child**

**Name:** Ariya Williams  **Sex:** Female  **Race:** Black or African American  **DOB:** ▮▮▮  **Age:** 2

**Observations**

**Other**

**Was Child present or injured during domestic violence?**

No

**Was child field interview completed?**

No

## Witness

## Lethality I

**Has (S) ever used / threatened to use a weapon against you?**

N

**Has (S) ever threatened to kill you or your children?**

N

| Victim Interview | King, Charles #20202 | 12/27/2017 13:44 |
|---|---|---|

recorded statement over the phone from B/F Dominique Williams. Ms. Williams stated she was assaulted by the father of her child. She identified him as B/M Hakeem Shabazz. The two have a child in common. They dated for approximately one year. The relationship ended in March of 2015. The two never lived together.
On December 6, 2017 Mr. Shabazz came to her residence located in the 1200 block of Pershing Avenue. He had their daughter with him. Ms. Williams invited him into her residence. He immediately started asking were the male was that she was currently seeing and is pregnant by. Mr. Shabazz knew Ms. Williams was pregnant. He grabbed Ms. Williams with his right hand around her throat and pushed her against a window, breaking the window. This caused pain to her head and throat. She stated she could speak but made it difficult to breath. He then put Ms. Williams into a headlock and threw her into the corner of the room. He then head-butted Ms. Williams in the face four times and grabbed Ms. Williams head and started to slam her head against the wall approximately five times. Ms. Williams stated she was starting to lose consciousness. Ms. Williams told Mr. Shabazz she would take him to where the male was that she was currently seeing. The two went outside to his car. Ms. Williams attempted to get his daughter out of the car. He stated are you taking her from me. He grabbed Ms. Williams by her jacket and pulled her onto the ground. This caused abrasions and pain to her knees. Mr. Shabazz left the scene with their daughter. Ms. Williams did not feel that their daughter was in danger. Their daughter was identified as B/F A. W. age 2. Mr. Shabazz was concerned that Ms. Williams would call the police. He dropped his daughter off at DCS for Ms. Williams to pick up. Mr. Shabazz lives in Tennessee.

| Activity Type: | Officer: | Date/Time: |
|---|---|---|
| Case Note | King, Charles #20202 | 12/27/2017 13:55 |
| The Fusion Center was emailed in an attempt to get the suspect's correct information. | | |
| Activity Type: | Officer: | Date/Time: |
| Case Review with Prosecutor | King, Charles #20202 | 12/27/2017 15:38 |
| The case file was given to Prosecutor Elizabeth Filipow for review. | | |

| Incidents | |
|---|---|
| **Incident #:** | **Summary:** |
| PD17138481 | 12/06/2017 - 1215, PERSHING, IN |
| **Offenses:** | |
| 35-42-2-C - BATTERY- DOMESTIC | |

PD17138481 - IMPD Southwest District - Marion (IN49)

**DL #:**
**Phone:** 270-331-8770 - Cellular (Date of Info: 12/08/2017)

---



| Victim | | **Supp #** 0 |
|---|---|---|

**Name:** WILLIAMS, DOMINIQUE  (Primary Name)  **Title:**  **Date of Birth:** ▮▮▮

**Race:** Black or African American  **Sex:** F  **Age at Occurrence:** 26 Years Old
**DL #:** ▮▮▮▮▮ Indiana)
**Address:** ▮▮▮
**Phone:** ▮▮▮ Cellular (Date of Info: 05/09/2016)
**Physical Description: Hgt:** 510  **Wgt:** 165  Date of Info: 02/24/2015
**Hair:** Brown
**Eyes:** Brown

**Injuries:** Apparent Minor Injury    *Daughter  B/F  Ariya Williams*

---

| **Incident Narratives** |
|---|

Title: Original Narrative

Author:  Ford Goble                      Date / Time:   12/08/2017 18:56 Hrs     Supp #:   0

On 12/08/17, Ms. Williams came into 555 King Av., to make a battery report by her baby's father.  She told me that on 12/6/17, her daughters father came over knocking on the porch door and window.  She let Mr. Shabaz-el into the porch.  He demanded that she tell him where the guy is that she is pregnant by.  He instantly got in her face demanding where the N....r was staying.  He then grabbed her throat with his right hand and began to choke her.  He then puts her in a head lock and pushed her against the wall and window.  The window did break.  He also head butted her face with and busted her lip.

To get him away from her , she told me that she would show him where he is staying.  They got to the car and he grabbed her coat and threw her onto the ground. This caused abrasions to both knees.  He then left the scene.

E.T. Montgomery came to the precinct and took pictures of Ms. Williams injuries.  Ms. Williams does have pictures of her

---

Report Run On:  SUNDAY DECEMBER 10, 2017 07:31:26 AM              By: DM              Page 2 of 3


*12/10*   KING

**Indianapolis Metropolitan Police Department**



Incident Report
551 N. King Ave, Indianapolis, IN 46222
Phone: (317) 327 - 6400



Southwest District

| ORI | County | Venue | Report # |
|---|---|---|---|
| INIPD0000 | Marion | INDIANAPOLIS | PD17138481 |
| **Report Date / Time** | **Occurrence Date / Time** | | **File Class** |
| 12/08/2017 16:43 Hrs (US/Eastern) | 12/06/2017 19:50 Hrs (US/Eastern) | | 35-42-2-C |

**Supplements:** Approved Report (1)

**Summary:** The father of her child came over to her house and battered her.

**Make this report attention to:**

| | | |
|---|---|---|
| **Gang Related:** | No | *STRANG* |
| **Domestic Related:** | Yes | *Preg?* |
| **Firearm Involved:** | No | |
| **Narcotics Involved:** | No | |
| **Precious Metals Involved:** | No | |

**L.E.P. (Limited English Proficiency) Resource Used:** LEP Resources Not Needed

**L.E.P. Language Used:** Not Applicable/None

## Incident Location

**Address:** 1215 North Pershing Avenue
**City:** Indianapolis   **County:** Marion   **State:** Indiana
**ZIP:**   **Country:** United States of America
**Township of Occurrence:**

**Beat:** SW   **Latitude:** 39.784693   **Longitude:** -86.199669
**Sub-Beat:** 10
**Comments:** W 12TH ST & W 14TH ST

## Incident Offenses

| Supp # | Offense | Status | Status Date |
|---|---|---|---|
| 0 | 35-42-2-C - Battery- Domestic | Open | 12/06/2017 19:50 Hrs |

**Attempted / Completed:** Completed
**Weapons Used:** Personal Weapons (Hands, Feet, Etc)

## Officers Involved

| Role | Name | Agency | Supp # |
|---|---|---|---|
| Assisting | PATROL OFFICER J. Montgomery (#31726) | IMPD Southwest District | 0 |
| Reporting | PATROL OFFICER F. Goble (#G5931) | IMPD Southwest District | 0 |

## Incident People

**Suspect / Offender**   **Supp #** 0   *2135 Sadler ave*
*Nashville TN 37210*

**Name:** SHABAZ-EL, HAKEEM (Primary Name)   **Title:**   **Date of Birth:** 11/20/1991
**Race:** Black or African American   **Sex:** M   **Age at Occurrence:** 26 Years Old   *5'7" 200*

Report Run On: SUNDAY DECEMBER 10, 2017 07:31:26 AM   By: DM   Page 1 of 3

Tuesday, January 16, 2018

# Indiana Criminal Crossmatch

WARNING!!! THIS INFORMATION IS ONLY FOR OFFICIAL DUTIES OF THE PROSECUTOR'S OFFICE. THE INDIANA PROSECUTING ATTORNEYS COUNCIL AND BCFORWARD, DO NOT CERTIFY THE ACCURACY OF THIS INFORMATION. THE COMPLETENESS AND ACCURACY OF THIS INFORMATION IS DEPENDENT UPON THE INFORMATION ENTERED BY THE ORIGINATING PROSECUTOR'S OFFICE. VERIFICATION OF THE INFORMATION SHOULD BE SOUGHT FROM THE ORIGINATING COUNTY.

## Possible Match in Marion County

| Juris | Offender | Name | Address | Social Security # | Date of Birth |
|-------|----------|------|---------|-------------------|---------------|
| 49 | 741887* | HAKEEM MALIK SHABAZZ-EL, JR | 207 S. Linda Drive<br>Shelbyville, TN 37160 | 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** | 11/20/1986 |

| Race | Sex | Hair | Eyes | Height | Weight | License State/# | State ID | FBI |
|------|-----|------|------|--------|--------|-----------------|----------|-----|
| B | M | BLK | BRO | 510 | 215 | TN/110889101** | | |

49G06-1801-F5-000218

OACN/Police Report #: dp170138481

Filed Date: 01/03/2018

*Count: 1 - Strangulation*
    *5 - Felony*
    *35-42-2-9(b)*
    *Penalty: 35-42-2-9(c)*

Disposition: Pending
Offense Date: 12/06/2017

*Count: 2 - Battery Resulting in Bodily Injury to a Pregnant Woman*
    *5 - Felony*
    *35-42-2-1(c)(1)*
    *Penalty: 35-42-2-1(g)(3)*

Disposition: Pending
Offense Date: 12/06/2017

*Count: 3 - Domestic Battery*
    *6 - Felony*
    *35-42-2-1.3(a)(1)*
    *Penalty: 35-42-2-1.3(b)(2)*

Disposition: Pending
Offense Date: 12/06/2017

*Count: 4 - Domestic Battery*
    *A - Misdemeanor*
    *35-42-2-1.3(a)(1)*

Disposition: Pending
Offense Date: 12/06/2017

*Count: 5 - Criminal Mischief*
    *B - Misdemeanor*
    *35-43-1-2(a)*

Disposition: Pending
Offense Date: 12/06/2017